NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-462

KENNETH R. LOISELLE

vs.

LINDA TENNYSON-LOISELLE & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Kenneth R. Loiselle (father), appeals from a Probate and Family Court judgment declaring that he had a continuing "obligation to maintain his daughter, Ardis C. Tennyson-Loiselle [daughter], as beneficiary of 25% of his adjusted gross estate" pursuant to the separation agreement and subsequent stipulation entered into between the father and the defendant Linda Tennyson-Loiselle (mother).  The father contends that the provisions requiring him to bequeath twenty-five percent of his adjusted gross estate to his daughter were intended to act as a guarantee securing his other financial obligations pursuant to the agreement, and the judge erred in failing to consider extrinsic evidence of the parties' intent to

_____

[1] Ardis C. Tennyson-Loiselle.

elucidate the unambiguous meaning of the contract.

Alternatively, the father argues that the separation agreement

is ambiguous such that the matter should be remanded for trial.

We affirm.[2]

Background. The mother and father married in February

1991, followed by the birth of their daughter in March 1992.[3]

The parties entered into a separation agreement on February 10,

1993, that was subsequently incorporated into a May 28, 1993,

divorce judgment. "Exhibit E" of the separation agreement

required the father to execute a will that on his death would

establish a trust for the benefit of the daughter, granting her

twenty-five percent of his "adjusted gross estate" as defined by

---

[2] In his notice of appeal, the father also purports to appeal
from the judge's denial of his motion for relief from judgment.
The motion was filed pursuant to Mass. R. Dom. Rel. P. 60 (b)
without reference to a particular subsection. While the
"[f]ailure to classify the appropriate section of rule 60(b) in
a motion for relief of judgment is not fatal," Honer v.
Wisniewski, 48 Mass. App. Ct. 291, 294 (1999), the father has
not argued on appeal -- in his brief or at oral argument -- that
the judge abused her discretion in denying his motion for relief
from judgment. In any event, we discern no abuse of discretion
in the judge's decision to deny the motion for relief from
judgment where, as discussed infra, the relevant provisions of
the separation agreement were unambiguous, and the judge did not
err in declining to consider extrinsic evidence presented by the
father. See Bank v. Thermo Elemental, Inc., 451 Mass. 638, 649
(2008) ("extrinsic evidence may be used as an interpretive guide
only after the judge or the court determines that the contract
is ambiguous"); Dilanian v. Dilanian, 94 Mass. App. Ct. 505, 515
(2018) ("motion for relief under rule 60(b) is directed to the
sound discretion of the motion judge" [citation omitted]).
[3] The daughter is the only child of the mother and father's
marriage.

2

the agreement. The separation agreement also required, among other things, the father to pay the mother $625 in weekly alimony until the death of either party or until January 1, 2011.[4] The agreement contained an integration provision, stating that the parties "have incorporated in this Agreement their entire understanding," and "[n]o oral statement or prior written matter, extrinsic to this Agreement, shall have any force or effect."

On November 3, 2011, the court entered a modification judgment that incorporated a stipulation agreement of the parties. The modification agreement provided, inter alia, that the father was obligated to pay all of the daughter's undergraduate and graduate education expenses until June 30, 2020; the father was obligated to pay the mother $685 weekly in child support until the daughter was emancipated;[5] the father's New York City condominium was to be excluded from his adjusted gross estate for purposes of Exhibit E; and the twenty-five percent of the father's adjusted gross estate that he was obligated to bequeath to the daughter would be calculated after subtracting either two million dollars or an amount equal to one

---

[4] Neither the separation agreement nor the judgment of divorce included a separate child support obligation.
[5] For purposes of both the separation and modification agreement, the daughter was considered "emancipated" when she was no longer entitled to support pursuant to G. L. c. 208, § 28.

3

third of his adjusted gross estate, whichever is less. The modification agreement further provided that notwithstanding its incorporation into the modification judgment, it "shall survive as a contract and have independent legal significance and be forever binding on the parties, their heirs and assigns," except for certain provisions relating to education expenses, child support, and medical insurance.

In September 2021, the father filed a complaint for declaratory judgment seeking a declaration that he no longer had an obligation to pay alimony or child support, bequeath any of his estate to a trust for the benefit of his daughter, or include his daughter as a beneficiary in his will. Following a hearing in December 2021, the judge denied the defendants' motion to dismiss the complaint and allowed the father's motion for judgment on the pleadings. In her decision, the judge declared that while the father's obligation to pay child support and alimony had terminated, his obligation to maintain his daughter as a twenty-five percent beneficiary of his adjusted gross estate remained in full force and effect based on the "clear and unequivocal" terms of the separation agreement and the modification agreement. The judge subsequently denied the

4

father's motion for relief from judgment, and this appeal followed.[6]

Discussion.  The father argues that the language of the separation agreement is unambiguous and "only makes sense if the provisions regarding [his] estate are viewed as a guarantee of his other obligations."  He further contends that the judge erred in failing to consider undisputed extrinsic evidence of the parties' intent that Exhibit E serve to secure the father's other obligations in lieu of life insurance as a security.[7]  In the alternative, the father asserts that the separation agreement is ambiguous because it does not explicitly state whether Exhibit E serves to secure his other financial obligations or is instead an independent obligation such that the matter should be remanded for trial.  The defendants counter that the separation agreement unambiguously establishes the father's independent obligation to bequeath twenty-five percent

_____

[6] We reject the defendants' assertion that the father's notice of appeal was "arguably" untimely.  The thirty-day appeal period following the judge's January 27, 2022 order denying the father's motion for relief from judgment expired on a weekend. See Mass. R. A. P. 4 (a) (1), as appearing in 481 Mass. 1606 (2019).  The father timely filed his notice of appeal on the first business day thereafter, February 28, 2022.  See Mass. R. A. P. 14 (a), as appearing in 481 Mass. 1626 (2019).

[7] The father references (1) statements in his affidavit attached to his motion for relief from judgment, and (2) his opposition to the defendants' motion to dismiss, for the proposition that the parties contemplated that the father's obligations to the mother and daughter would cease after his support obligation terminated.

5

of his adjusted gross estate to his daughter, which is reaffirmed in the modification agreement.  The defendants have the better argument.

Whether contract language is ambiguous, and the interpretation of an unambiguous contract, are questions of law that we review do novo.  See Bank v. Thermo Elemental, Inc., 451 Mass. 638, 648 (2008); Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 36 (2008).  To determine whether a contract is ambiguous, "the court must first examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history or the intention of the parties."  Bank, supra.  "Contract language is ambiguous where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and obligations undertaken" (quotation and citation omitted).  Id.  "[A]n ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other's."  Suffolk Constr. Co. v. Lanco Scaffolding Co., 47 Mass. App. Ct. 726, 729 (1999), quoting Jefferson Ins. Co. v. Holyoke, 23 Mass. App. Ct. 472, 475 (1987).  While "extrinsic evidence may be admitted when a contract is ambiguous on its face or as applied to the subject matter," "[t]he initial ambiguity must exist" and "extrinsic evidence cannot be used to contradict or change the written terms, but only to remove or to explain the existing uncertainty

or ambiguity." General Convention of the New Jerusalem in the U.S. of Am., Inc. v. MacKenzie, 449 Mass. 832, 836 (2007), citing Robert Indus., Inc. v. Spence, 362 Mass. 751, 753-754 (1973).

Here, there is no contract language supporting the father's interpretation of Exhibit E as a security for his other obligations. Rather, the language supports the defendants' interpretation that Exhibit E establishes an independent obligation for the father to bequeath twenty-five percent of his adjusted gross estate to the daughter. Paragraphs 2 (d) and (e) of Exhibit E provide that "upon the [daughter] attaining the age of thirty-five," the entire trust amount "shall be distributed to the [daughter]," and if "the [daughter] dies before age thirty-five" with surviving children, the amount "shall be paid to the [daughter's] children then surviving." In contrast, the father's obligation to pay alimony was set to expire on January 1, 2011, his obligation to pay the daughter's education expenses was to terminate on June 30, 2020, and his obligations to pay child support and provide medical insurance were to cease upon the daughter's emancipation. Furthermore, while the modification agreement altered the calculation for the daughter's twenty-five percent share of the father's adjusted gross estate, it reaffirmed the father's obligation pursuant to Exhibit E and did not contain any language to suggest it was

7

merely a security.  Without contract language supporting the father's interpretation of Exhibit E as a security for his other obligations, we discern no ambiguity that would permit the introduction of extrinsic evidence to determine the meaning of the integrated separation agreement.  See General Convention of the New Jerusalem in the U.S. of Am., Inc., 449 Mass. at 836; Eastern Holding Corp. v. Congress Fin. Corp., 74 Mass. App. Ct. 737, 741-742 (2009).  Accordingly, the father's claim that the judge erred in failing to consider extrinsic evidence to "elucidate the meaning of the unambiguous contract" is unavailing.  See Winchester Gables, Inc. v. Host Marriott Corp., 70 Mass. App. Ct. 585, 591 (2007) (parol evidence rule "does not bar extrinsic evidence that elucidates the meaning of an ambiguous contract" [quotation and citation omitted] [emphasis added]).

Where the unambiguous contract language establishes the father's obligation to bequeath twenty-five percent of his adjusted gross estate to the daughter through creation of a trust, we affirm the judgment on the pleadings and the order

denying the father's motion for relief from judgment.[8,9]

                                    So ordered.

                                    By the Court (Neyman, Desmond
                                      & Smyth, JJ.[10]),

                                    *Joseph F. Stanton*

                                    Clerk

Entered:  June 1, 2023.

---

[8] We decline the defendants' request for attorney's fees pursuant to Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019).
[9] To the extent that we have not specifically addressed subsidiary arguments in the parties' briefs, they have been considered, and do not warrant further discussion.  See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).
[10] The panelists are listed in order of seniority.